May it please the Court, Scott Evans on behalf of the appellant Jane Doe-2 who brought this action when she was 21 1⁄2 years old, stemming from a criminal sexual battery that happened when she was 17 years old and a senior at Lower Richland High School in Richland County District 2 in South Carolina. What I'd like to do first with the Court's permission is to focus in on one of the crucial time periods in this case, which creates one of the largest issues of fact that we contend was incorrectly weighed by the District Court in this case. There's much agreement as to the law that governs this case between the appellant and the appellee. Where we differ is in the application of the law to the various facts that we contend remain in dispute. In December of 2005, excuse me, 2015, two undercover narcotics agents saw a marked Richland County Sheriff's Department vehicle meeting a teenager at 10.30 p.m. behind a Target and noticed that something was suspect and immediately called that deputy's supervisor. The governing case as to the first issue is Edmondson v. Eagle National Bank, and the question in the first issue is fraudulent concealment. In that case, this Court defined acts of fraudulent concealment as some contrivance intended to exclude suspicion and prevent inquiry. We contend that in December of 2015, there were a series of acts that were designed to do just that, to prevent inquiry into this Target situation. The following day, Captain Ewing, Deputy Jamel Bradley's supervisor, showed up at the school. He already had access to Deputy Bradley's personnel file, which showed a series of suspect acts dating back to 2010. Three acts in total involving inappropriate conduct with minor students and Deputy Jamel Bradley, including incidents of him driving minor students home in his patrol car against departmental policy. Captain Ewing arrives at the school, and according to the joint appendix at page 233, he decided to skip the chain of command because he didn't want everyone talking about this. He skipped the chain of command because that would ensure that there would be no formal I.A. investigation that would go into his personnel file, and an I.A. investigation would also require that all of the relevant witnesses be indicated. When he arrived, according to the record at, I believe, page 234 of the joint appendix, the first thing that Captain Ewing does is instruct school officials not to contact this 17-year-old minor's parents, despite the mandatory reporter laws. He states that the sole thing he is there to do is to ask Jane Doe what she was doing with Deputy Bradley and to find out if Deputy Bradley's story matches Jane Doe 2's story. The stories did not match. However, the investigation ends there with zero written documentation, zero contact to Jane Doe 2's parents, and zero information being entered into Deputy Bradley's file. Counsel, for the purposes of fraudulent concealment, though, isn't the focus on what the defendant did to mislead or conceal facts from that plaintiff? We would contend that under Edmondson, the Fourth Circuit, this Court has previously held that what constitutes reasonable conduct, when you're looking at reasonable diligence, can vary from one plaintiff and may not constitute reasonable conduct for the sake of another plaintiff. I'm not focusing on the plaintiff's conduct, I'm talking about that defendant's conduct, because the defendant is the one who was concealing facts or misleading the plaintiff, correct? Correct. And so what conduct here was intended to, what facts were withheld from this plaintiff at this time? At this time, the plaintiff was not withheld facts directly, but her legal guardians were. She is a minor operating under a legal disability. She has no ability to vindicate her rights in the district court under Rule 17c. I fully appreciate that were there not tolling until the plaintiff turned 18, what you have just said would strike one as perhaps as quite problematic, but there was automatic tolling until she turned 18, right? Correct, correct. The evidence before the district court on page 198 was that only 9% of these school sexual abuse cases are reported, and that a minor, according to the testimony at the Joint Appendix, page 195, excuse me, the report of this plaintiff's psychologist, the psyche of an adolescent is such that they are not capable of understanding the coercive nature of a criminal sexual battery committed by a school official, much less one who also happens to be an armed law enforcement agent. We contend that the... I mean, needless to say, I don't disagree with that fact. The question is, why does that fact matter, given there's tolling until they're 18? Maybe they should have told it until they're 25, right? Maybe they're not fully developed until they're 35. Some of us think at 46 we're not fully developed, right? But, like, they made the decision, that being the legislature, made the decision that we toll it to 18 for the reason you've explained, that before you're 18, there are real challenges in understanding lots of different things, including what you described. But they toll it to 18, seemingly to address the very concern that you've raised. And so, I understand the fact that you've given us, or maybe it's an expert opinion, but I'll call it a fact. But help me understand why that matters, given that we've got the tolling. Well, Your Honor, the legislature actually, in the fourth section of our argument, has a special tolling statute. I don't think that applies here, so help me with this argument. I'd be happy for you to make the other argument, but I'd rather hear about this argument, because I think that one fails for different reasons. Well, our legislature actually recognized this fact and makes special circumstances for any individual who's sexually assaulted under the age of 21 and tolls that statute until their 27th birthday for this very reason. Because it is known to this legislature, it is certainly known to law enforcement, that minors who are the victims of coercive sexual relationships do not report. 91% go unreported, and our legislature recognized that with Statute 153555, which is at issue elsewhere in this case. Coming back to some of the affirmative acts, these affirmative acts continue into 2016. In 2016, there is evidence that makes its way to Captain Ewing that one of his officers is actively engaged in a coercive sexual relationship with one of the minors. And that, quote, these relationships continue to be covered up and Deputy Bradley continues to get away with these things. However, the investigation into this particular allegation involves just seven questions, one attempt to contact this concerned parent, and one attempt to visit her place of employment. Despite the fact that the Sheriff's Department has subpoena power, they had the ability to speak to the daughter that reported this sexual assault with the permission of the mother. And they had the ability and the obligation to notify the Department of Social Services when an allegation such as this arises, that one of your officers is engaged in a sexual relationship with a minor, particularly in the school setting. 2018, these acts continue. In March of 2018, there is a rumor that Deputy Bradley has gotten one of the students at this high school pregnant. Nothing is done. And finally, in April of 2018, a formal report under South Carolina's mandatory reporter statute comes forward that a different individual, a minor, Jane Doe One, who is 15 years old, has reported to a counselor that Deputy Bradley has sexually assaulted her. Finally, an investigation is done as required by law. Jane Doe One's parents are notified as required by law. And Deputy Bradley is polygraphed. He fails this polygraph miserably. An investigation is opened by Captain Jackson and Sergeant Lindler with the Richland County Sheriff's Department, who both provide testimony that they believed Jane Doe One and did not believe Deputy Bradley. However, while Captain Jackson is on vacation, her investigation is summarily closed by her supervisors without explanation. She goes on the record and says that this case was closed because Deputy Bradley is a, quote, unicorn who is beyond reproach. Into the following year... Counsel, can I just ask you, just so I can track the argument, are we still talking about fraudulent concealment? This is all the fraudulent concealment. We are, Your Honor. We contend that the facts that make up the fraudulent concealment continue into the next year. In January of 2019, Jane Doe One, 15-year-old Jane Doe One's parents, want to investigate civil liability, so they serve a FOIA on the Richland County Sheriff's Department for Jamel Bradley's personnel file. Because, of course, they know that just because their daughter has been wronged does not mean they have a tort claim, certainly does not mean they have a constitutional supervisory liability claim, unless they can show that there have been allegations in the past that make it so that the supervisors should know. I mean, I guess I sort of, I have a question that is, I think, related to that, which is, I guess, why that is so, why a person wouldn't at least be on inquiry notice that, and now I guess I'm talking more about your client, Jane Doe, too, that, you know, if you know that the school knows about the target incident, and you know that they conduct kind of an inadequate investigation, and most important, you know that none of the supervisors of the SRO in question are stopping him from continuing the relationship with you, why isn't that enough to put someone on at least inquiry notice that there may be a claim here? Under Shaw versus Stroud, we respectfully contend, Your Honor, that that's not enough. Merely knowing that they knew about us meeting at Target is not enough to know that we have a constitutional violation by the supervisors. This was a meeting that took less than five minutes, wherein Jane Doe, too, was asked, did you happen to see Deputy Bradley at Target last night? She says yes, and gives some excuse for their meeting, but she has no knowledge of the fact that he has multiple prior accusations. I can't understand why you need multiple prior, that's where I guess I'm asking you, why are, those are obviously excellent facts for proving your claim, but I don't understand why they are necessary to a claim, even if it happens once. Supervised reliability does not require multiple failures. It's enough if it happens once. What we do, Your Honor, under the first prong of Shaw versus Stroud, have to show a pervasive risk, which one prior incident would not necessarily satisfy that burden. Okay. I understand. You made a comment earlier, and I just want to, I wasn't familiar with it, and I just want to figure out where in the record I can find it. You suggested that the Richland County officer, when he went to the school in December 15-ish, I wrote down, and I may have misquoted here, directed the school not to contact her parents? That's correct. That's in the joint appendix at page 234. Thank you. Coming back briefly to 2019, we contend again that these affirmative acts continue. The documents that were needed to show notice were purposely withheld by the Richland County Sheriff's Department, resulting in a state court order that they had knowingly violated FOIA with regard to Jamel Bradley's personnel file. And into July of 2019, the month that the FLEs contend the statute of limitations run, Sheriff Flott is still getting on the record saying, quote, nothing happened between Jane Doe 2 and Jamel Bradley. And Jane Doe 1 is a liar. Her allegations are completely false. We stand behind this officer, and his actions are above reproach. I see that my time is coming to an end, so I'll, pending any further questions, step down. Thank you. May it please the court, my name is Andrew Lindeman. I'm here for the appellees. I want to touch on, since this involves a statute of limitations case or defense, I want to touch on a few points, including the key timeline that's involved in this case. I also want to make the distinction in this case that, of course, the district court dismissed not only the federal claims, but the state claims on the basis of a statute of limitations defense. And there are two different statute of limitations that obviously apply. Under the state law, which has an accrual rule that's based upon an objectively reasonable person, the statute of limitations is two years after the plaintiff reached majority. And she reached majority in early July. Her exact birth date is in the record in the sealed portion of the transcript. But early July 2016, so the statute of limitations on the state law claims ran in early July of 2018. The statute of limitations for the section 1983 claim is obviously based under the Wilson case on the general residual statute of limitations in South Carolina, which is three years. And ultimately the statute of limitations on the federal claim ran in July of 2019. As I indicated, there are two different approaches to accrual under state law versus under federal law. The plaintiffs have not challenged the accrual decision of the district court under state law. District court found that both statute of limitations were triggered or the cause of action accrued in December 2015 based upon a series of events that were just mentioned by Judge Harris, where ultimately Captain Ewing conducted an investigation, having learned that Deputy Bradley was seen with Jane Doe, too, behind a target the previous day. He went to the school. He conducted an interview. And incidentally, I dispute the suggestion that Captain Ewing instructed the assistant principal not to contact the parents. I believe the evidence is that she attempted to contact the parents, were unsuccessful, and they still went forward with the interview with the assistant principal sitting in with the student and with Captain Ewing. I hadn't seen that fact before. It's not in the briefs anywhere. And when I 234 refers us to the deposition of Mrs. Michelle, you're right. She says that she did contact the parents. But he also says that not that Captain Ewing instructed not to, which was the claim made, but that Captain Ewing said that you did not need to contact. Right. So it's the opposite of an instruction in saying I'm not giving you an instruction one way or the other. Right. And again, as I understand it, he obviously wanted to go forward with being able to get to the bottom of this issue and felt that having the assistant principal sit in would at least have a similar effect as a parent to sort of calm the student with somebody that they knew and had a relationship with. But ultimately, that's not a terribly material fact to it. I did want to correct it. But as the district court found that based upon the investigation that was done on December 4th, 2015, of course, the plaintiff denied having any type of relationship and certainly a sexual relationship with Deputy Bradley. And she conceded in her deposition years later that she lied to both school personnel as well as sheriff's department personnel about that relationship, totally trying to keep it a secret, which she successfully did until her deposition was taken in November of 2019 in the Mother Doe case, the preceding litigation. But ultimately, based upon what the plaintiff learned and some reasonable inferences to be drawn from that meeting and then the subsequent lack of any follow-up, lack of any discipline that she was aware of to Deputy Bradley, that Deputy Bradley wasn't removed from the school, that Deputy Bradley didn't break off any relationship with her, that it was reasonable to conclude, as the district court did, that the plaintiff was on inquiry notice that she had a cause of action or potentially had a cause of action not just against Deputy Bradley but against supervisory personnel as well. Can I ask you just a quick question? I think it's just a minor thing, but it made my head spin a little bit. So the district court says inquiry notice as of December 2015 in part because, and I thought actually in large part when it comes to the supervisory claim, because the relationship continues and it's clear the supervisors aren't doing anything to stop it. But you wouldn't know in December 2015 that the relationship continued, right? You'd only know that after it continues. I don't know that this really makes a difference. Do you see the sort of conundrum? I do, Judge Harris. And quite frankly, the facts are undisputed that the relationship ended before her graduation. And her graduation was in May of 2016. Call it May. She was on inquiry notice in May and that outcome doesn't change. And obviously she hadn't reached majority in May. She reached majority two months later. There's a lot of leeway here. I mean, ultimately the complaint was… I'll make sure I understand the point there. We know the relationship continued. But what we don't know is the sort of precise dates of when it continued. The plaintiff testified… When was the target? Do you remember when in December the target incident occurred? It occurred on December 3rd. And then the meeting with Captain Ewing was the following day. And ultimately the plaintiff herself testified that the relationship continued. She couldn't give exact dates, but she indicated that it started sometime before Thanksgiving and it ended about a month before her graduation. What we don't really know is whether the relationship continued in the latter half of December, in which case she would have been on notice at that point, or whether it didn't pick back up and they took a hiatus until January or February. Well, I believe in her affidavit she does say that she spoke to Deputy Bradley and they decided after that meeting with Captain Ewing to better lay low for a while. It didn't indicate how long they laid low. But her testimony was definitely clear. The sexual relationship continued into the next year. And she broke it off basically, or it ended about a month before graduation. So that would put us roughly at April, May 2016. And again, because of the way the timeline works in this case, we're not wed necessarily to a specific day because it's not like they were one day late in filing the lawsuit. I mean, the lawsuit wasn't filed until June of 2020. Counselor, she was aware about the deficiencies in respect to the first investigation. And I put investigation in quotes because it was really just speaking to the victim and also speaking with the deputy. But with respect to the second report that came from a parent that also referenced an audio recording of the alleged victim speaking with that parent's child about this inappropriate relationship, there was a second investigation that was then conducted by the Internal Affairs. And at that time, plaintiff is not aware of this second piece. Now, that is something that she didn't have notice for. And there was then a second opportunity where the supervisors could have stepped in and conducted a more sufficient investigation. And so why doesn't that restart or reset the inquiry notice? Well, I mean, certainly she had enough information by the time she graduated, I think, to trigger inquiry notice. But that's something that was a fact also that was withheld from her. Well, it wasn't withheld from her. Well, they didn't speak to her after that second report. They spoke to the deputy again, from what I recall in the record, but they never talked to her again. Well, they attempted to talk to the, quote, concerned parent, as the district court indicated, and the concerned parent refused to cooperate with them. So that was the stumbling block with that part of the investigation, the renewed investigation based upon the concerned parent coming forward. But ultimately, that all occurred also after the graduation or certainly after the relationship ended. That concerned parent didn't come forward until May of 2016. Based on the plaintiff's own testimony, her relationship had already ended at that point. And, of course, she graduated during that month, and she reached majority about two months later. Ultimately, moving beyond the accrual issue to the fraudulent concealment issue, which seems to be the focus of the plaintiff's arguments, I would first point out, and I think, Judge Giles, you made this point, the Edmondson case spells it out very clearly. It says, put differently, the fraudulent concealment tolling doctrine applies in situations where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action. In this particular instance, there is no evidence of any trick or contrivance, as the language of the opinion says, to deceive the plaintiff herself. I mean, the plaintiff has denied absolutely any relationship in a specific interview. And, in fact, several years later, as a result of the Mother Doe lawsuit being filed, there was another attempt by a lawyer for the Sheriff's Department to schedule a meeting and actually meet with the plaintiff. And she called her lawyer, and her lawyer didn't allow for that interview to take place, and that was in October of 2019. Ultimately, she was deposed in November of 2019, and that's the first time she ever revealed any sexual relationship, any improper relationship between herself and Deputy Bradley. But going back to the point on the fraudulent concealment, issues that occur after the fact, and certainly after the statute of limitations has run, certainly have no bearing, number one, on fraudulent concealment. And, of course, in their brief, I didn't really hear it this morning, but in their brief, there's references to Sheriff Lott being deposed in the Mother Doe case in July of 2019, which was after both statute of limitations, state and federal, had run, and that he was not convinced at that point that there was anything to the allegations by Jane Doe, too. Of course, that quickly changed after she finally gave a statement. Her deposition was given on November 19th, 2019. The following day is when the press release and the press conference was held. So clearly, that doesn't show any intent to fraudulently conceal something. They finally heard from Jane Doe, too, who revealed the nature of the relationship, and certainly Sheriff Lott changed course and dealt with that immediately. But, again, those issues, that sequence didn't take place until after the statute of limitations had run. So what you focus on, obviously, is before the statute of limitations had run, we construed, obviously, their arguments in their brief that they were arguing somehow fraudulent concealment by silence, and in their reply brief, they said, no, that's not our argument at all. Instead, they focused on several different points, many of which you've heard here today, the nature of the investigation that was done by Captain Ewing in December of 2015. If you don't have it, it's fine. I can get somebody to find it. But you mentioned a contact with the lawyer for the Sheriff's Department to the plaintiff in October of, is it 18 or 19? And do you have a... It was 19, Your Honor. So it's like a month before her deposition. A month before her deposition as a result of a discovery that was being conducted in the Mother Doe case. If you look at page 343 of the joint appendix, and that is the plaintiff's affidavit, paragraph 15, she says, in October of 2019, a woman showed up at my apartment one day out of the blue, goes on to talk about her encounter with Joanna McDuffie, who was Sheriff Lott's in-house lawyer. So it's actually undisputed. It comes from the plaintiff's own testimony. Thank you. But that was done as a result of discovery that was ongoing in the Mother Doe case, which was filed in October of 2018. But ultimately, so the focus as far as the fraudulent concealment needs to be on the period of time before statute of limitations runs. Have to look at whether there was actual steps to take to deceive or trick the plaintiff herself. There is no evidence of that. At best, what the plaintiff points to is their same allegations that support their allegations of a negligent investigation. That Captain Ewing didn't go through the chain of command. He went directly to Sheriff Lott. That there wasn't as thorough an investigation conducted as could possibly have been conducted at that time. You don't need to oversell that. It wasn't the most thorough that could possibly undersell the deficiency here, don't you think? Well, yeah, certainly. And we do, with all due respect, we are blessed with some hindsight here. I mean, the incident as described at Target, I mean, it wasn't like the other deputies caught him in some sort of inappropriate act. It was simply he was talking with a student at night. And I'm not suggesting that that's appropriate behavior. But my point being, it was, it certainly didn't suggest facially that it was a sexual relationship. But you also have conflicting statements about what the purpose of that meeting is. And it's at 10 o'clock at night. And it could really, you know, could there ever be anything appropriate in that? Well, and I guess my point being, we can debate a negligent investigation claim. And obviously, this case wasn't decided on the merits. The point I'm trying to make is it's fraudulent concealment. It's not negligent concealment. It's not the statute of limitations is told because the defendant didn't do a proper investigation of their own employee's behavior. That's not what equitable tolling. That's not what fraudulent concealment is. Fraudulent concealment is a deliberate, intentional act to deprive the plaintiff of information they need to have inquiry notice, to be able then to proceed with that inquiry notice, to do their due diligence and determine whether or not they have a cause of action. And the district court's findings on this, I believe, are quite solid. Ultimately, she did have sufficient information based upon the investigation that was conducted by Captain Ewing. She knew that she had been seen with Deputy Bradley at the target. She was questioned about it. She knew her supervisors, who Captain Ewing was his supervisor, was aware of this. And then ultimately, as the district court made the very points, she knew that no action was taken. So to the extent that she had inquiry notice at that point of a supervisory liability claim, and she didn't pursue it. And, of course, part of the reason she didn't pursue it is she was attempting to keep this secret. And she kept it secret until she was forced under oath to be able to give a deposition in November 2019. At that point, both of her statute of limitations had run. Real quickly, I will rely on the briefs on this particular issue, but there's the question as to whether the statute of limitations, both for the federal claim and the state claim, should be under 15-3-555. We have case law from South Carolina appellate courts that say clearly that doesn't apply in this instance. The Doe versus Duncan case is a very similar case to this one, except it involves, if I remember correctly, a fire department employee. And the South Carolina Court of Appeals said, number one, it's a statute of limitations. It's not a tolling provision, as the plaintiff argues in this case. But that the TOR Claims Act statute of limitations, which is two years, applies, not the sexual abuse statute of limitations. So ultimately, as far as the federal statute of limitations is concerned, the Supreme Court has spoken very clearly that you don't look at the specialty statute of limitations. In fact, in the Owens case, there's a very lengthy footnote 8, which lists out all kinds of specialty statute of limitations from across the country. And if you look at those closely, a number of them are statute of limitations for specifically sexual abuse or incest type claims. And the Supreme Court rejected that, said you look at the residual or general statute of limitations. That's exactly what the district court did in this instance. We would ask the court to affirm the rulings of the district court on both the state law claims as well as the federal claims. Thank you. Very briefly, there has been a suggestion that under the Edmondson case, fraudulent concealment as related to the statute of limitations requires some sort of malicious intent to defraud. But the Fourth Circuit, this court actually defined it in the context of Edmondson, not as some sort of fraudulent intent to defraud, but as a contrivance intended to exclude suspicion and prevent inquiry. It is our position that there is certainly evidence of that in the record, starting with the decision not to inform Jane Doe 2's parents. Can I ask you a question? I think I understand your argument on fraudulent concealment. But I'm trying to figure out sort of how it meshes with the rest of your case because you sort of present it as kind of an independent argument, even if we're wrong about inquiry notice. But as I understand it, for fraudulent concealment, it has to be the case that the plaintiff is deprived of information that would have put her on notice. Like it kind of has to work, right? Like there has to be an effort to deprive the plaintiff of information that is successful. But if the district court was right, hypothetically, that this plaintiff was on inquiry notice as to the supervisory claims in or around December 2015, if that is true, then isn't it also true that any efforts to fraudulently prevent her from being on that notice failed and you don't have a fraudulent concealment claim? Do you see what I'm saying? Is this really an alternative argument? Well, I see what you're saying, Your Honor, but in December 2015, she has no legal right. No, I understand you think that, but I guess I'm asking you to assume hypothetically that the district court was right, just hypothetically, about inquiry notice December 2015. If that is so, assuming it, do you still have a fraudulent concealment claim? We contend, Your Honor, that first of all, she still did not have notice of a supervisory claim, which requires very specific information. I know, I know, but can you just humanly indulge me and assume absolutely hypothetically, I'm not holding you to this, that she was on inquiry notice on the supervisory claim in December 2015. If hypothetically that were true, would there still be a fraudulent concealment claim? We would contend, Your Honor, that the acts in 2016, 18, and 19 would further conceal, even if she had inquiry notice. We know that the facts that she needed to bring those claims were withheld through 2018 and 19. In fact, again, at that point, the facts necessary were on the Richland County Sheriff's Department's servers, and they refused to turn them over. And in fact, violated state law in connection with refusing to turn those documents over. We know that Jane Doe, too, was not contacted when her name came up again in 2016. And again, into 2019, Sheriff Lott is still saying nothing happened. After having seen these very salacious emails that are contained in the record, he still maintains that nothing happened between Jane Doe, too, and Deputy Bradley. And Jane Doe, one, is fabricating her allegations. This was still the official sworn testimony at that point in time. We contend that those are affirmative acts that would further deter any of the victims, including the third victim for whom Deputy Bradley is currently under indictment, from coming forward. As it relates to the Statute 555, it's our contention that under South Carolina law, the title does not make any difference as to whether it's a tolling statute or a specialty statute. The specialty statute sets a finite time period. In South Carolina, we have one, two, and three year statute of limitations versus a tolling statute that would measure the running of the statute of limitation by some independent act, such as a birthday. It's our contention that this is, in fact, a tolling statute because it doesn't set a finite time period. Rather, it measures the statute by some independent event. And finally, it is our position that the same evidence used to support fraudulent concealment is applicable to the equitable tolling of the state claims under the South Carolina Supreme Court's decision in Doe v. Bishop of Charleston. And they also relate to the issue of when did the claim accrue. And I see that I'm out of time, Your Honors. So, pending any further questions, step down. Thank you. We thank both counsel for appearing today and helping us with this case. We're sorry we can't come down to shake hands, but we wish you the best. And then we'll ask the courtroom deputy to just put us in a short recess. This honorable court will take a brief recess.
judges: Pamela A. Harris, Julius N. Richardson, Patricia T. Giles